## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

In re:

    MICROFIBRES, INC.

Case No. 1:16-bk-10154

Chapter 7

CONTAINS REQUEST FOR
EMERGENCY DETERMINATION

### EMERGENCY MOTION OF HOPE BILLINGS MCCULLOCH FOR
### PRELIMINARY AND PERMANENT RELIEF FROM THE AUTOMATIC STAY

Now comes Hope Billings McCulloch ("Mrs. McCulloch" or "movant") and moves,

pursuant to 11 U.S.C. § 362(d), for relief from the automatic stay arising from 11 U.S.C. § 362

for the reasons set forth below.  Pursuant to Local Rules 1005-1(d)(2)(G) and 9013-2(d)(2), the

response time for this motion is not set forth because relief is sought on an emergency basis and

the motion contains a request for emergency determination.

## I.    INTRODUCTION

1.    Mrs. McCulloch comes before this honorable court as an equitable owner of the

debtor corporation, Microfibres, Inc. ("Microfibres") and of the marital interest in the associated

partnership, Microfibres Partnership, Ltd. ("MPL").  Mrs. McCulloch seeks a declaration that

ongoing proceedings in the Rhode Island Family Court, to wit *McCulloch v. McCulloch*, No. P-

06-1525 and, more specifically, the Family Court's valuation of the Microfibres stock ("Family

Court Proceeding"), are not subject to the automatic stay of 11 U.S.C. § 362 arising as a

consequence of the filing of the present petition, or in the alternative, for relief from such stay

pursuant to subsection (d) of that statute to the extent required to enable the Family Court to

perform its mandate from the Rhode Island Supreme Court.

2.      Essentially, Mrs. McCulloch submits that the automatic stay should not halt the

ongoing Family Court Proceeding because

- The assets at issue in the Family Court are the stock in the debtor
  corporation, Microfibres, and the marital portion of the ownership of
  MPL, neither of which are assets of the bankruptcy estate, and and which
  therefore are not properly the subject of the automatic stay, and

- For those same reasons and based upon the facts of this case, relief from
  the stay is justified to permit the Family Court to conclude its Supreme
  Court-mandated valuation of the corporate interests and award of the value
  of those interests among the parties to the divorce, which will not
  implicate the bankruptcy estate.

3.      There is no doubt that Microfibres is a company that has suffered financially for

many years, and therefore it is not altogether surprising that some form of bankruptcy protection

has been sought.  In fact, Mrs. McCulloch has previously and repeatedly suggested that *orderly*

liquidation of the company would be appropriate to preserve the value of the asset rather than

continuing business operations that resulted in millions in losses, year after year, for over a

decade.  Its owner and Chief Executive Officer, James Robert McCulloch ("Mr. McCulloch")

resisted those suggestions at every turn and only now, truly on the eve of trial in the Family

Court, seeks the extreme remedy of liquidation under Chapter 7.  Thus it is equally beyond doubt

that Mr. McCulloch is using these proceedings as a weapon in his protracted and ongoing

divorce battle with Mrs. McCulloch over the value of Microfibres stock.  As explained below, it

would be manifestly unjust and contrary to law to permit Mr. McCulloch to do so and therefore,

if the automatic stay applies to the divorce case, good cause exists to grant relief from that stay.

4.      Mrs. McCulloch respectfully seeks expedited treatment of this motion, either in

the form of (a) expedited consideration and decision, or (b) a grant of temporary relief from the

automatic stay during this Court's consideration of the present motion.  A long-scheduled (and,

by movant, long-awaited) trial in the Family Court, mandated by the Rhode Island Supreme

2

Court, is set to commence in the Family Court on February 8, 2016 with the presentation of

expert witness testimony on the value of the corporate interests.  As set forth more fully below,

the Family Court has cleared its docket for the entire week to allow for that testimony, which

involves ten different experts from around the world.  On January 29, 2016, the Family Court

was advised that the filing of this petition was imminent, and maintained the trial date of

February 8 over the objections of Mr. McCulloch's counsel.  Movant respectfully asks that this

motion be heard and decided in time to maintain that schedule.

## II.    FACTS

### The McCulloch Divorce

5.    The McCulloch marriage lasted over 20 years, commencing on Valentine's Day,

1989.  *McCulloch v. McCulloch*, 69 A.3d 810, 814 (2013).  For most of the years, it was a loving

and productive, traditional marriage, with Mrs. McCulloch having discontinued her work outside

the home in favor of being a full-time homemaker raising the children, while Mr. McCulloch

devoted himself to his business activities.  *Id.* at 816.  However, that changed beginning in early

2000 when Mr. McCulloch came to believe he suffered from what he called "multiple chemical

sensitivity" and began to exhibit very odd behaviors, such as wearing a mask in public with his

children, requiring multiple millions be spent in their home to make it "chemical-free" and

requiring his children's friends to be fragrance free, even though he would continue to play cards

in smoke-filled rooms and attend golf tournaments with his buddies.  At the same time, he began

surreptitiously taping his wife (even in the marital bedroom) and his kids.  These behaviors and

other unattainable demands prompted Mrs. McCulloch to move away from Mr. McCulloch in

2005 and to file for divorce in 2006.  *See id.* at 814.  Mr. McCulloch counterclaimed for divorce.

Neither party alleged fault.  *Id.*

6.      Those complaints led to a "protracted, if not epic, battle in the Family Court" that has lasted nearly half as long as the marriage, over nine and one half years. *Id.* at 813.  Much of that battle has concerned the parties' ownership of Microfibres and MPL and the equitable distribution based on the value of those ownership interests.  *See generally id.*

7.      The McCulloch's divorce was litigated in Family Court from 2006 until August 17, 2010, when the Family Court issued its Decision Pending Entry of Judgment ("DPEFJ").  *See* Exhibit A to the accompanying Declaration of Jeffrey K. Techentin ("Techentin Decl.").  Generally speaking, the Family Court found neither party to be at fault for the breakdown of the marriage, divided non-corporate liquid assets on a 50-50 basis, and allocated to each of the parties the homes where they had been living and the associated personal property.  The parties were given joint custody over the sole remaining minor child of the marriage, but physical placement was with Mrs. McCulloch.

8.      The DPEFJ also addressed Microfibres and MPL, having determined them to be marital assets belonging to Mrs. McCulloch and her former husband, Mr. McCulloch, although legal title is in Mr. McCulloch's name as to both entities.[1]  *McCulloch v. McCulloch*, 69 A.3d 810, 823 (2013).

9.      Mr. McCulloch had acquired Microfibres during the marriage by a stock purchase agreement.  In 1990, Mr. McCulloch purchased the common stock of Microfibres from his father, using marital funds, and thus the common stock was and remains a marital asset.[2]  He did so with the assistance of sophisticated corporate counsel, who structured a recapitalization of the

---

[1]      More precisely, Mr. McCulloch is the legal owner of 100% of the issued stock of Microfibres (30,000 shares of common stock) and 90% of MPL; the remaining 10% ownership interest in MPL is held by Microfibres. 49.9967% of MPL is marital property.  *See McCulloch*, 69 A.3d at 820.

[2]      In the divorce proceedings, Mr. McCulloch contended that Microfibres was not a marital asset because it had been a "gift in lieu of inheritance" from his still-living father, despite the fact that it was transferred pursuant to a fully-negotiated purchase and sale agreement, and that he paid in excess of fair value for the business.  The Family Court rejected those contentions and determined on summary judgment that Microfibres was, in fact, a marital asset.

company that enabled Mr. McCulloch to purchase the stock of the company, valued at

approximately $6.9 million, for just $105,000.  As a result of the transaction, Mr. McCulloch

took over as CEO, while his father remained involved with the company as the owner of

preferred shares and as Chairman of the Board.  In 1992, Mr. McCulloch oversaw a second

recapitalization of Microfibres, using corporate assets to buy out his father's remaining interest

in Microfibres and taking complete control over the company as 100% owner of all issued stock,

Chief Executive Officer, and Chairman of the Board.  Mr. McCulloch has continued to enjoy

complete control over the company since that recapitalization.

10.     That ownership interest comprised the largest asset of the estate.  Microfibres

was, according to the testimony offered at trial, worth between $106 million (Mr. McCulloch's

expert's number) and $126.3 million (Mrs. McCulloch's expert's number).  *McCulloch*, 69 A.3d

at 815.  The Family Court, however, elected to reject any valuation and instead to distribute the

property in kind to the parties (that is, he awarded portions of the stock in Microfibres to each,

and portions of the marital component of MPL to each) on a 75-25 basis, with Mr. McCulloch

receiving 75% of the ownership, and Mrs. McCulloch receiving 25%.  The Family Court made

no allowances for the protection of Mrs. McCulloch as a minority shareholder in Microfibres.

**The Supreme Court Mandate and Subsequent Valuation of Stock**

11.     Mrs. McCulloch appealed the Family Court's decision, including the manner in

which the corporate assets had been allocated among the parties.  Finding that it had been error

not to value the corporate assets and to distribute in kind without knowing the value of the assets

distributed, the Supreme Court vacated the portion of the decision addressing the equitable

distribution of the marital estate and remanded the matter.  It directed the Family Court to

> value Microfibres and MPL as of the date of trial and distribute the marital estate
> in accordance with § 15-5-16.1.  The trial justice shall permit the parties to
> supplement the existing record by offering any additional testimony or other

evidence that may assist him. The Family Court then shall issue a decision
pending entry of final judgment that is not inconsistent with this opinion.

*Id.* at 830-31.

12.     Since 2013, when the matter was remanded, the parties have been engaged in

protracted discovery pursuant to that mandate.  Over the course of two years, both parties

engaged multiple experts, on three different continents, to evaluate the various components of

the business, review relevant records, and prepare detailed reports of their findings.  Finally, in

August of last year, after the Family Court decided the appropriate valuation date for the

corporate assets, the valuation reports were completed and the matter proceeded towards trial.

13.     Although Microfibres is a company with operations in several locations

throughout the world, the valuation process should not have taken over two years.  But this phase

of *McCulloch v. McCulloch* has been hard fought just as the earlier "epic" battle that preceded

the appeal to the Supreme Court, largely as a result of Mr. McCulloch asserting positions that,

while ultimately rejected by the Family Court, require enormous time and litigation effort.

14.     For example, despite Mr. McCulloch having purchased the common stock of

Microfibres with marital money, during the marriage, and solidifying that ownership into

complete control of the company years into the marriage, he took the position during the first

phase that the corporation was not a marital asset but was his own separate property.  That

position had to be rejected by the Family Court after extensive discovery, including from

numerous third parties, on partial summary judgment.  *See McCulloch*, 69 A.3d at 829.

15.     Likewise, after failing to disclose that the corporation had entered into agreements

to make a major investment in a Chinese operation, Mr. McCulloch opposed efforts by Mrs.

McCulloch even to value the newly-acquired China assets, and opposed a motion brought by her

seeking a court-appointed expert to value the operation, and refused to provide the

documentation necessary for Mrs. McCulloch to value it herself.  Techentin Decl. Exh. B

(1/23/09 Tr. at 40); *see also McCulloch*, 69 A.3d at 815.  After he successfully thwarted all

efforts at valuing the Chinese venture, and after putting on his own evidence as to the overall

value of the company, Mr. McCulloch took the astonishing position in his post-trial briefing that

the Family Court could not value Microfibres, in part, because of "the dearth of any information

that would allow it to quantify the value of the China venture, its impact on the value of

Microfibres, or to make any reasonable valuation forecasts concerning Microfibres now that the

transaction has been consummated and Microfibres is exercising control over the China

operations."  Techentin Decl. Exh. C (Defendant's Post-Trial Memorandum) at 23.  Ultimately,

of course, Mr. McCulloch was successful in (1) preventing any valuation of the China operation,

and (2) convincing the Family Court that it could not value Microfibres, leading directly to the

error that led to the current re-trial on valuation.

16.     Mr. McCulloch also serially delayed the proceedings both in the Family Court

and in the Supreme Court, seeking multiple continuances of the trial date and then, on appeal,

submitting no fewer than ten motions to extend the time to file his briefs (Mrs. McCulloch

sought none).

17.     Nothing changed after remand.

18.     In 2013, Mr. McCulloch opposed Mrs. McCulloch's motion to freeze the liquid

assets of the company in light of the precipitous decline in the company's cash position, which

had dropped from roughly $44 million in 2008 to just $12.7 million in August 2013, arguing

simply that freezing those assets would put the company out of business.  Techentin Decl. Exh.

D (10/30/13 Tr. at 59-60).

19.     Less than six months later, the company tacitly acknowledged Mrs. McCulloch's

position, concluding that it was in a "stressed cash situation," which, if not reversed, would result

in "bankruptcy, liquidation, or forced sale" as early as 2015.  Techentin Decl. Exh. E (Minutes of

Microfibres Corporate Strategic Meeting).  Mrs. McCulloch again sought relief in the Family

Court, urging the court to take some action to preserve the dwindling value in the company.

Among other things, Mrs. McCulloch suggested appointing a receiver or setting a valuation date

coupled with requiring Mr. McCulloch to post a bond, on the theory that it was Mr. McCulloch,

and not Mrs. McCulloch, who was deciding whether and how to gamble with the marital asset

rather than liquidating it and that a bond would shield Mrs. McCulloch from her ex-husband's

decisions about how to use a marital asset over which she had no control.  Mr. McCulloch

vigorously opposed the motion, which was denied.

### The Limited Scope of Proceedings Pending in the Family Court

20.     In theory, the issues on remand were relatively straightforward:  re-value the

corporate assets and have a trial on that.  But Mr. McCulloch refused all efforts to engage in

informal information exchange that would enable Mrs. McCulloch's experts to gain access to the

books and records of the company, and only produced records in response to formal discovery in

a slow, piecemeal, drawn-out fashion.  Despite repeated requests by Mrs. McCulloch for the

cooperation necessary to achieve a reasonably speedy resolution of this case, the date of the trial

has slipped and slipped again, thus causing the effective date of the valuation to slip, as well.

21.     That situation was resolved in December 2014, when the Family Court observed

that under the Supreme Court mandate, it was obliged to value the company "as close to the trial

date as possible."  12/18/14 Tr. at 37.   It determined that the date closest to trial would be

December 31, 2014, requiring both sides to present evidence of the value of the corporate marital

assets as of that date.  *Id.*  The court set a preliminary trial date of April 1, 2015, but the

disclosure of information needed for the valuation delayed the exchange of expert reports until
August 2015.  The court subsequently scheduled the matter for trial commencing on Monday,
January 25, 2016.

22.     Justice McCann has made clear that the scope of the Family Court Proceeding
will not impact the bankruptcy estate because his charge is "to determine the value of the
corporation, of the business, and make a determination of what the Plaintiff's entitlement would
be in terms of percentage, I guess, is what it turns out to be in terms of the value, as opposed to
the stock ownership which Judge Lipsey awarded to her."  Techentin Decl. Exh. F (9/9/15 Tr. at
21).  Or, as the matter was expressed by counsel for Mr. McCulloch on many occasions, "the
asset here [in the Family Court] is 30,000 shares of Microfibres, not the internal assets of the
company."  *Id.* Exh. G (6/26/14 Tr. at 22).  The Family Court Proceeding will assess, and then
make a decision based upon, the value of the stock of Microfibres and thus any award would be a
personal award involving Mr. and Mrs. McCulloch, not the assets held by the debtor corporation.

## III.   ARGUMENT

### A.     This Court Should Declare that the Family Court Proceeding is Not Subject to the Automatic Stay Because the Proceeding Does Not Implicate Any Assets of the Bankruptcy Estate.

23.     Mrs. McCulloch seeks a declaration stating that Family Court Proceeding is not
subject to the automatic stay because the Proceeding does not implicate any assets of Microfibres
bankruptcy estate.

24.     Pursuant to 11 U.S.C. § 362, when a debtor files for bankruptcy, aside from
statutorily-defined exceptions, all judicial and non-judicial actions against the debtor affecting
property of the bankruptcy estate are automatically precluded and stayed.

25.     As a general rule, the automatic stay protects only the debtor, property of the
debtor or property of the debtor's bankruptcy estate.  *See Monarch Life Ins. Co. v. Ropes &*

*Gray*, 65 F.3d 973, 979 (1st Cir. 1995)(the automatic stay "ostensibly protects *only* the debtor

and its property . . .")(emphasis in original); *In re Knowles*, 442 B.R. 150, 160 (B.A.P. 1st Cir.

2011)(the automatic stay prohibits "formal and informal acts taken against the debtor or the

estate").

26.      It is well established that shares of stock in a debtor corporation are property of

the individual stockholders, not property of the debtor corporation. *See In re Journal-News

Corp.*, 193 F.2d 492, 492 (2nd Cir. 1951)(determining that a debtor corporation had "no property

interest in the shares of its stock owned by its stockholders"); *Victor v. Riklis*, No. 91 Civ. 2897

(LJF), 1992 WL 122911, *4 (S.D.N.Y. May 15, 1992)(stating that "the fact that the stock at issue

here is [corporation] stock does not give [the corporation] a property interest in those shares; it is

well-established that a corporation has no such interest in shares of its stock held by

stockholders"); *Matter of Calamity Jane's, Inc.*, 22 B.R. 5, 7 (Bankr. D.N.J. 1982)(noting that

"[a] corporation has no property interest in the shares of its stock owned by its stockholders");

*see also In re Texas Consumer Finance Corp.*, 480 F.2d 1261, 1266 (5th Cir. 1973)(finding that

the Bankruptcy Court had no jurisdiction over shareholders' stock in a bankruptcy proceeding

regarding the shareholder's corporation).

27.      While a corporation's bankruptcy proceeding may impact the rights of holders of

shares of that corporation's stock, that impact does not equate to the corporation having a

property interest in the shareholders' stock. *See Matter of Calamity Jane's, Inc.*, 22 B.R. at 7

("Where a public corporation is involved to invoke Section 362 automatic stay provisions to

prevent the sale of stock would create chaos.  Where a closely held corporation is concerned, it

might be said that the interests of the corporation may be affected by the transfer of ownership of

stock but that situation does not call for the invocation of a Section 362 automatic stay as the shares of stock involved are not property of the debtor.").

28.     Accordingly, shares of stock in a debtor corporation are not property of a debtor corporation's bankruptcy estate and not subject to the automatic stay. *See In re Xtra Petroleum Transport, Inc.*, 473 B.R. 430, 433-34 (Bankr. D.N.M. 2012) (finding that acts to enforce a lien against stock of a debtor-corporation, owned by the corporation's sole shareholder, not the corporation, are not acts to recover a claim against the debtor-corporation's estate); *see also Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009) (stating that "the automatic stay does not protect the property of parties such as officers of the debtor [corporation], even if the property in question is stock in the debtor corporation, and even if that stock has been pledged as security for the debtor's liability"); *In re Marvel Entertainment Group, Inc.*, 209 B.R. 832, 838 (D. Del 1997)(noting that "automatic stay provisions of the Bankruptcy Code are not implicated by the exercise of shareholders' corporate governance rights").

29.     Also, the bankruptcy estate is fully protected here because the Family Court Proceeding involves the court issuing only a monetary award based on the value of stock and, therefore, no property of the corporation debtor's bankruptcy estate will be transferred out of the estate. *See In re Secrest*, 453 B.R. 623, 630 (Bankr. E.D. Va. 2011)(citing *In re Robbins*, 964 F.2d 342, 345-47 (4th Cir. 1992)(noting that when a family court found a husband's stock to be marital property, the court's valuation and monetary order mandating the husband pay the wife a certain percentage of the stock value did not involve property being transferred out of the husband's bankruptcy estate.)

30.     To movant's knowledge, the only case that appears to have found that the a corporate bankruptcy would stay family court proceedings as to the owner of stock in that

company is *Pullen v. Pullen*, No. 1-10-0238, 2011 WL 10068790, *4 (Ill. App. Ct. May 20,

2011) (holding that where a trial court assessed the value to a husband's business and charged

the value against his distributive share of the marital estate while the business was in bankruptcy,

the trial court's judgment was void in light of the automatic stay provision in the Bankruptcy

Code). However, the court in *Pullen* failed to address the distinction between valuing and

assigning the stock of a debtor corporation (or the value of that stock), as opposed to assigning or

distributing the actual property of the debtor corporation. Accordingly, *Pullen* is inconsistent

with the established precedent in this regard and incorrectly decided.

31.     As in *Robbins* and *Seacrest*, the Family Court Proceeding will not involve

transferring any property out of the bankruptcy estate. After protracted divorce proceedings that

have now spanned over nine years, the Rhode Island Supreme Court has mandated that the

Family Court determine the value of the parties' ownership interest in Microfibres and distribute

that value among the parties pursuant to R.I. Gen. Laws § 15-5-16.1. *McCulloch*, 69 A.3d at

831.

32.     Microfibres is not a party to the Family Court Proceeding.

33.     Because the marital asset at issue in the Family Court Proceeding is the issued

common stock of Microfibres, the debtor corporation has no property interest in the subject

matter of the Family Court Proceeding.

34.     In carrying out the mandate of the Rhode Island Supreme Court, the Family Court

Proceeding will not implicate any asset of Microfibres or of the bankruptcy estate as it will

merely ascertain the value of the stock of the corporation and assign the value of that stock

among the parties. While there is a contingent possibility that one or the other of the parties to

the Family Court Proceeding might make a claim against the corporation arising out of the

results of the Family Court Proceeding, this Court would, of course, have jurisdiction over such claims.

35.     Therefore, the provisions of the automatic stay resulting from the filing of the present petition is not applicable to the Family Court Proceeding and the Bankruptcy Court lacks jurisdiction to stay the Family Court Proceeding.  *See* 11 U.S.C. § 362(b)(2)(iv); *Matter of Cuba Elec. & Furniture Corp.*, 430 F. Supp. 689, 691 (D.P.R. 1977) (noting that if the debtor had no property interest in eviction proceedings, then the Bankruptcy Court had no jurisdiction to stay the eviction proceedings).

36.     Accordingly, Mrs. McCulloch respectfully requests this Court declare that the Family Court Proceeding is not stayed by virtue of these bankruptcy proceedings.

**B.     Even If this Court Determines that the Family Court Proceeding Implicates the Assets of the Bankruptcy Estate, this Court Should Exercise its Discretion to Grant Relief From Stay.**

37.     In the alternative, for the same reasons set forth above and for the additional reasons below, Mrs. McCulloch seeks relief from the automatic stay for cause, pursuant to 11 U.S.C. § 362(d)(1), to continue on in the Family Court Proceeding because relief is necessary to permit litigation to conclude in the Family Court and to adequately protect Mrs. McCulloch's interests.

38.     This Court has discretion under Section 362(d) "to terminate, annul, modify, or place conditions upon the automatic stay."  *In re Soares*, 107 F.3d 969, 976-77 (1st Cir. 1997).

39.     Mrs. McCulloch only seeks relief from the stay to the extent the Family Court Proceeding will consider, value, and distribute the value of the issued shares of Microfibres and the non-corporate ownership interest in MPL.  No relief from stay is sought that would permit the Family Court to enter any orders relative to the assets of the debtor corporation (*e.g.*, distributing property owned by the corporation or MPL to the parties).

13

40.     Simply, relief from the automatic stay is warranted to avoid further, lengthy

delays in a divorce proceeding that has already dragged on for over nine and one-half years, been

to the Rhode Island Supreme Court and back again, and which is, finally, ready for trial and final

resolution.

41.     Pursuant to 11 U.S.C. § 362, the commencement of a bankruptcy proceeding

automatically stays all other judicial and non-judicial proceedings affecting property of the

bankruptcy estate.  According to 11 U.S.C. § 362(b)(2)(iv), the filing of a bankruptcy petition

does not operate as a stay "for the dissolution of a marriage, except to the extent that such

proceeding seeks to determine the division of property that is property of the estate[.]"

42.     However, pursuant to 11 U.S.C. § 362(d)(1), bankruptcy courts "shall grant relief

from the stay . . . for cause, including the lack of adequate protection of an interest in property of

such party in interest."

43.     Bankruptcy courts commonly afford litigants in divorce proceedings relief from

the automatic stay, finding that cause exists to permit a family court to proceed with division of

the marital estate among the parties.

44.     Cause was deemed sufficient when a debtor's spouse requested to lift an

automatic stay to allow a divorce court to make an appropriate division of the marital estate,

which included her husband, the debtor's, bankruptcy estate.  *In re White*, 851 F.2d 170, 173-74

(6th Cir. 1988)(the Sixth Circuit Court of Appeals affirmed the bankruptcy court's determination

to lift the stay, opining that the "bankruptcy court properly deferred to the divorce court's greater

expertise on the question of what property belongs to whom"); *see also In re Lewis*, 423 B.R.

742, 756-57 (Bankr. W.D. Mich. 2010)(citing *In re White* and permitting parties in a divorce

14

proceeding to continue the divorce action to identify the marital property and divide it between the parties while one party was involved in bankruptcy proceedings).

45.     This Court has stated that "[i]t is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'" *In re Schweikart*, 154 B.R. 616, 617 (Bankr. D.R.I. 1993)(determining that granting relief from stay was appropriate given that "protracted litigation [ ] ha[d] already taken place in the Family Court[,]" given the Family Court's familiarity with the particular case, and given the Family Court's experience in dividing marital property)(quoting *In re Mac Donald*, 755 F.2d 715, 717 (9th Cir. 1985)).

46.     In fact, "Bankruptcy courts usually defer to state courts in divorce matters, lifting the stay to permit the state court to equitably distribute the marital property according to state law." *In re Zachmann,* No. 10 B 32410, 2013 WL 1316647, *3 (Bankr. N.D. Ill. Apr. 2, 2013)(the bankruptcy court granted husband relief from an automatic stay to permit the state court to equally distribute marital property); *In re Takacs*, No. 08-14183-SSM, 2008 WL 4401395, *2 (Bankr. E.D. Va. Sept. 19, 2008)(the bankruptcy court granted husband relief from an automatic stay in his wife's bankruptcy proceeding to file for divorce and allow the state court to determine an equitable distribution of their assets); *In re Nelson*, 335 B.R. 740, 755 (Bankr. D. Kan. 2004)(the bankruptcy court granted wife relief from an automatic stay in the husband's bankruptcy proceeding to permit the divorce litigation to continue in order to promote judicial economy and because "[t]he property division issues inherent in this divorce case may be handled best and more quickly reached by state courts").

47.     Relief from the automatic stay is also warranted to avoid the use of this proceeding as a tactic in the Family Court Proceeding.  This petition for bankruptcy, based on a corporate decline literally a decade in the making, was clearly timed in order to cause maximum disruption to the Family Court Proceeding and maximum prejudice to Mrs. McCulloch, who was set to call her expert witnesses literally the next business day after the decision to seek bankruptcy relief had been disclosed.   Parties in a divorce should not be able to abuse the Bankruptcy Code "as a weapon in a marital dispute." *See In re White,* 851 F.2d at 174; *In re Lewis*, 423 B.R. at 757.

48.     As seen above, bankruptcy courts routinely grant relief from stay to permit courts to value and distribute marital property.  *See In re Schweikart*, 154 B.R. 616 at 617; *see also In re Zachmann,* 2013 WL 1316647 at *3; *In re Takacs*, 2008 WL 4401395 at *2; *In re Nelson*, 335 B.R. 740 at 755.

49.     It should be noted that in the cases cited above, the bankruptcy courts granted relief from stay even where a spouse had filed for personal bankruptcy.  Here, neither party to the Family Court Proceeding is in bankruptcy and the relationship between the divorce case and the bankruptcy is even more attenuated.  Accordingly, the grounds for relief from the stay are stronger in this case because the property at issue in the Family Court Proceeding is separate and distinct from the corporation debtor's property.

50.     Thus, just cause exists sufficient to justify granting Mrs. McCulloch relief from the automatic stay, so she can continue with the Family Court Proceeding and finally resolve the matter consistent with the mandated of the Rhode Island Supreme Court. *See McCulloch,* 69 A.3d at 830-31.

51.    Mrs. McCulloch is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), for cause, because if this Court does not grant relief from stay to continue on with the Family Court Proceeding, the Family Court would be prohibited from valuing and distributing marital assets, specifically the Microfibres stock and the marital portion of Mr. McCulloch's ownership interest in MPL,  frustrating the Rhode Island Supreme Court's mandate.

52.    Mrs. McCulloch's interests will be severely and adversely impacted if relief from the automatic stay is not granted.  Rather than proceeding to a ready trial, which can fully and finally resolve the matter after nearly ten years of litigation, Mrs. McCulloch will be forced to monitor and/or participate in the bankruptcy proceedings regarding the corporation, reformulate her evidence for an eventual trial in the Family Court after untold delay, at great personal and financial expense.  If, as Gladstone is reported to have said, "justice delayed is justice denied,"[3] what little justice might still be available in the Family Court Proceeding will certainly dissipate like the value of Microfibres itself.

53.    If relief from stay is not granted, Mr. McCulloch will have successfully used this Court as a weapon in the ongoing divorce case.

54.    Therefore, Mrs. McCulloch will be irreparably harmed unless she is granted relief from the automatic stay.

**C.    The Need for Expedited Relief**

55.    The present petition for Chapter 7 relief has been timed to disrupt the Family Court Proceeding.  The trial was scheduled for two full weeks:  the week of January 25, during which Mrs. McCulloch would present her experts, and the week of February 8, during which Mr. McCulloch would present his experts.

---

[3]    Laurence J. Peter, Peter's Quotations, p. 276 (1977).

56.     The significant scheduling accommodation made by Justice McCann was justified

by the complexity of valuing a large, global entity like Microfibres.  Mrs. McCulloch anticipates

calling at least six experts on the issue of the valuation of the corporate assets, while Mr.

McCulloch has disclosed ten experts.  Rescheduling the experts would be enormously difficult,

particularly given that each party is bringing experts from and throughout this country as well as

China and Belgium.

57.     On the Friday before trial, at 2:16 p.m., counsel for Mr. McCulloch circulated a

letter to the Family Court judge, Justice McCann, informing him that at least one week earlier,

the corporation had determined to petition for bankruptcy relief and asserting that in light of the

anticipated petition, no trial would be necessary.  Techentin Decl. Exh. H (1/22/16 Ltr. from L.

Jones to Justice McCann).  Later that day, Mr. McCulloch's counsel filed an emergency motion

to postpone the trial based upon a personal issue pertaining to one of Mr. McCulloch's attorneys.

*Id.* at Exh. I (emergency motion to continue trial).

58.     On the trial date, January 25, 2016, Mrs. McCulloch and her counsel appeared at

the Family Court, as did Mr. McCulloch's counsel and counsel to Microfibres, Stephen J.

Carlotti of Hinckley Allen.  The court conducted a conference on the record to determine what

course to take in light of the representations regarding corporate bankruptcy and the emergency

motion to postpone.  Techentin Decl. Exh. J (1/25/16 Tr.) at 2.

59.     After a discussion among counsel, including a representation by Mr. Carlotti that

a Chapter 7 filing was expected to be filed on Wednesday, January 27, 2016, the court

determined that in light of the emergency motion it would cancel the trial for the balance of the

week but continue the trial on February 8, 2016, the second week originally scheduled.  The

court also determined that Mr. McCulloch's experts would be presented at that time consistent

with the original schedule.  Finally, the court scheduled a further status conference for that

Friday, January 29.  *Id.* at 3-4; 26-29.

60.    At the January 29 status conference, the Court heard from counsel for Mr.

McCulloch, who requested that the trial be postponed for personal reasons, and from counsel for

Microfibres, who advised that the filing of bankruptcy was imminent.  After an inquiry to

counsel regarding the applicability of the automatic stay, Justice McCann decided, again, to

retain the February 8 trial date, and did not grant the request to postpone the trial for the personal

reasons of opposing counsel.[4]  Techentin Decl. Exh. K (1/29/16 Tr. at 9-10).

61.    For the same reasons that this Court should declare that the Family Court

Proceeding are beyond the jurisdiction of these bankruptcy proceedings or, alternatively, that

relief from the automatic stay is warranted to permit the Family Court Proceeding to value the

corporate assets and issue a judgment as to that value among the parties to the divorce, Mrs.

McCulloch respectfully suggests that expedited treatment of this motion, and relief consistent

therewith, is warranted in order to allow the Family Court to proceed on the established schedule

towards final judgment.

62.    Alternatively, Mrs. McCulloch requests that this Court grant interim, preliminary

relief from the automatic stay in order to permit the Family Court Proceeding to take evidence

during the consideration of the merits of this motion.  Mrs. McCulloch respectfully submits that

permitting the trial to go forward will impact no assets of the bankruptcy estate as the attorneys

and experts have been engaged by Mr. and Mrs. McCulloch personally and the trial will not

burden the debtor corporation in any fashion.  Moreover, it is highly unlikely that any final

decision will be rendered by the Family Court on the issues tried prior to the resolution of this

---

[4]    Mrs. McCulloch will, of course, promptly advise this Court of any changes to the schedule in Family Court that would alter the circumstances underlying this request for expedited relief.

motion in the ordinary course, and therefore the grant of preliminary relief will not impact the bankruptcy estate.

WHEREFORE, Mrs. McCulloch respectfully requests the following relief:  (1) a declaration that the issued stock in Microfibres and Mr. McCulloch's ownership interest in MPL are not assets of the Microfibres bankruptcy estate and therefore the automatic stay does not bar continuing the Family Court Proceeding; and (2) in the alternative, that the automatic stay arising from 11 U.S.C. § 362 be modified for just cause to permit the continuation of the Family Court Proceeding.

**ORAL ARGUMENT IS REQUESTED IF THE MOTION IS OPPOSED**

Respectfully submitted,

HOPE BILLINGS MCCULLOCH

By her Attorneys:

/s/ Jeffrey K. Techentin
Jeffrey K. Techentin (No. 6651)
jtechentin@apslaw.com
Kyle Zambarano (No. 7171)
kzambarano@apslaw.com
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel:  401.274.7200
Fax:  401.751.0604
Dated: January 29, 2016

## CERTIFICATE OF SERVICE

      I hereby certify that on the 1st day of February, 2016, I caused a true copy of the foregoing document to be sent via the Court's Electronic Filing system ("ECF") and that notice will be sent via the ECF system Notice of Electronic Filing (NEF) to all counsel who are registered participants identified on the Mailing Information for Case No. 1:16-bk-10154.


<u>/s/Jeffrey K. Techentin</u>

732923.v1