B 2100A (Form 2100A) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of Rhode Island

In re  MICROFIBRES, INC.            ,            Case No.  1:16-bk-10154

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| BE Capital Management Fund LP | ALLNEX USA INC. |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee should be sent:
205 East 42nd Street, 14th Floor
New York, NY 10017

Court Claim # (if known):  71
Amount of Claim:  $8,428.17
Date Claim Filed:  03/21/2016

Phone:  646-604-9635
Last Four Digits of Acct #: _____

Phone:  770-280-8377
Last Four Digits of Acct. #: _____

Name and Address where transferee payments should be sent (if different from above):

Phone: _____
Last Four Digits of Acct #: _____

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: /s/ Thomas Braziel            Date: 05/25/2016
    Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

## Evidence of Transfer

**Allnex USA Inc** ("Assignor"), for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby unconditionally and irrevocably sell, transfer and assign unto **BE Capital Management Fund LP, 205 East 42nd Street, 14th Floor, New York, NY 10017**, its successors and assigns ("Assignee"), all rights, title and interest in and to all claims of Assignor in the aggregate amount of **$8,428.17,** as stated in the Proof of Claim and or Debtor's schedules and or cure claim schedules against Microfibres, case number **1:16-bk-10154**, in the United States Bankruptcy Court, District of Rhode Island ("the Court'), or any other court with jurisdiction.

Assignor hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this Assignment of Claim as an unconditional assignment and the Assignee herein as the valid owner of the Claim. All references in this document to dollar amounts shall be deemed to be expressed in US Dollars, unless specifically noted otherwise and initialed by the Assignee.

IN WITNESS WHEREOF, dated the 10 day of _____May_____, 2016

By: _____
(Signature of Authorized Party)

_____Allnex USA, Inc.____
(Company Name)

_____Stephen Lane_____
(Print name of Authorized Party)

| Invoice | PAGE: 1 | **Allnex** | | Allnex USA Inc.<br>9005 Westside Parkway<br>Alpharetta GA 30009 |
|---|---|---|---|---|

ORIGINAL

*PLEASE REMIT TO:*

ALLNEX USA INC.
PO Box 742396
ATLANTA
GA   USA   303742396

*The above address is for remittances ONLY. Please direct all orders and inquiries to the office that handles your account.

**SHIPPED TO:**
MICROFIBERS INC
PRINT PLANT DIV
3811 KIMWELL DRIVE
WINSTON SALEM
NC   USA   27103

**SOLD TO:**
MICROFIBERS INC
PRINT PLANT DIV
P.O. BOX 24249
WINSTON SALEM
NC   USA   27114

| INVOICE | DATE |
|---|---|
| 1701066 | 1/13/16 |
| SOLD BY | LOAD |
| | 872150 |
| OUR ORDER | SHIPPED |
| 219938 | 1/12/16 |

| CO. | PMA | SHIP PT. | DEST. | CUST. STATISICAL NO. | BKR |
|---|---|---|---|---|---|
| 008 | | IP | 470 | 514932 | 1 |
| IND. | | XFD | | CUST. BILLING NO. | D/S |
| 00 | | | 00 | 514932 | |
| TAX | CUST. COPIES | SLSMN LOCATION | | DIST. OFFICE | S |
| CEC | 1 | 0 | 0 | | 0 |
| LOT NO. | TERMS | EXCH FROM/FOR | | REQ SHIP DATE | REQ DELY. |
| | 03 | | | | 12/22/15 |

**SPECIAL INFORMATION / INSTRUCTIONS**

| YOUR ORDER NO. | | SHIPPED FROM | |
|---|---|---|---|
| 0300040954 | 12/18/15 | PLAINFIELD | IN |

| ROUTE AND CARRIER | | PREPAID/COLLECT |
|---|---|---|
| USF HOLLAND EXPRESS | HMES10445728245 | Prepaid |

| F.O.B. | TERMS |
|---|---|
| PREPAID DELD BUYERS PLANT | NET 30/INV.DATE |

**Owner Carrod Harrison**

| ITEM | PRODUCT DESCRIPTION | QUANTITY/UNIT | PRICE | AMOUNT(USD) | PRODUCT NO. | NO. | DPT | KINDS |
|---|---|---|---|---|---|---|---|---|
| 1 | CYMEL 1172 RESIN<br>HMS: 3909300000<br> 2500.000<br>Caption For 1st Cust Code<br>    CUSTOMER CODE<br>Value for 1st Customer Code<br>    CHE1000000220<br>FUEL SURCHARGE<br>INLAND FREIGHT<br>WAREHOUSE SURCHARGE | 2500.000 LB<br><br><br>Lot# WLNJ6345T | 3.2300 | 8,075.00<br><br><br><br><br><br><br>15.43<br>137.74<br>200.00 | 10943S01T11 | 1 | 360 | IBC |
| | INVOICE | Sub Total<br>Total | | 8,428.17<br>8,428.17 | | | | |

The sale/transaction invoiced above is governed by seller's terms and conditions of sale as set forth on the reverse side hereof or available at http://www.allnex.com/terms or subject to the provisions of the written contract if any exists, covering the sale/transaction invoiced above and signed by an authorized representative of Allnex. Acceptance of the order referenced above is expressly conditioned on buyer's consent to seller's terms and conditions.

**Final Page**

GENERAL SALES TERMS & CONDITIONS OF SALE ("SELLER")
1. APPLICATION. THESE GENERAL SALES TERMS AND CONDITIONS APPLY TO ALL SALE AGREEMENTS, ORDERS, ACKNOWLEDGEMENTS OR CONFIRMATIONS WHICH REFERENCE THESE TERMS AND ALL OTHER SALES MADE BY SELLER UNLESS OTHERWISE AGREED IN A WRITING SIGNED BY AN AUTHORIZED REPRESENTATIVE OF SELLER and are referenced below as the "Terms". Each contract document, order, order acknowledgment or confirmation that references or incorporates these Terms, together with any Schedules, exhibits or other documents incorporated by reference in such documents, is referenced below collectively as the "Contract". The term "Material(s)" used below refers to the products or materials sold by SELLER and identified in the Contract. The Contract constitutes the complete and exclusive statement of the terms of the contract between the parties regarding the sale and purchase of the Material(s). No additional terms or any rescission, waiver, alteration or modification of the Contract shall be valid unless it is made in a writing signed by an authorized representative of each party and specifically references the Contract. None of BUYER's inconsistent and/or additional terms and conditions submitted in acknowledging or accepting this Contract or in issuing purchase orders, releases, shipping instructions or other documents shall apply. Unless expressly provided in a Contract document signed by both parties, if any term, condition or other provision contained in any schedule, exhibit or other document expressly incorporated by reference into the Contract is in any way inconsistent with or creates any ambiguity concerning these Terms, these Terms shall control. BUYER's acceptance or use of any shipment of Material after SELLER's offer of sale referencing or incorporating these Terms, but before the Contract is signed by either party or before BUYER otherwise makes a definite and timely act or expression of acceptance, shall constitute acceptance of the terms of the Contract as to that shipment only, but shall not in itself constitute an acceptance of the final written expression of the Contract with respect to future shipments.
2. REVISION OF PRICE. SELLER reserves the right to revise the price, point of delivery/shipment and payment terms hereunder upon written notice to BUYER. The price applicable to any order accepted under the Contract shall be the price in effect on the date of shipment. If SELLER is prevented from revising any price hereunder by any law, governmental decree, order or regulation, or if any price at any time in effect hereunder is nullified or reduced by reason of any law, governmental decree, order or regulation, SELLER shall have the right to terminate the Contract by giving written notice of termination to BUYER.
3. WEIGHTS; SHIPMENTS. SELLER shall not be obliged to deliver, in any month, any quantity of Materials in excess of 10% of the BUYER's forecasted annual volume for the Materials made known to SELLER or, in the absence of a forecasted annual volume, ten percent (10%) of the historical purchase volume of the BUYER over the preceding twelve months subject to the availability of such Materials and SELLER's right to allocate available Materials for its internal use and its other customers. SELLER's weights taken at shipping point shall govern. SELLER reserves the right to route shipments. All shipment and delivery dates are estimated dates only.
4. PAYMENT; CREDIT STATUS. Unless agreed in writing by SELLER, payment in full without deduction or set off is due thirty (30) days from invoice date. SELLER may alter or revoke credit terms at any time without notice. Any amount not paid when due will be subject to a late payment fee computed daily at a rate equal to one and one-half percent (1.5%) per month or the highest rate permissible under applicable usury law. If any lot or parcel shall not be accepted and/or paid for in accordance herewith, or any stated periodic minimum quantity shall not be ordered out, then SELLER may without prejudice to other lawful remedy, defer shipments until settlement is made, terminate this contract or treat such failure as substantially impairing the value of the whole contract and hence as a breach hereof. If in the opinion of SELLER the financial responsibility of BUYER shall at any time become impaired, SELLER may decline to make further shipments except on advance receipt of cash or satisfactory security.
5. WAIVER. Failure of SELLER to exercise any right under this contract shall not be deemed a waiver thereof.
6. TAXES. BUYER shall reimburse SELLER for all taxes, excises or other charges which SELLER may be required to pay to any government (national, state or local) upon, or measured by, the production, sale, transportation, delivery or use of the Materials sold hereunder.
7. PATENTS. SELLER reserves the right to discontinue deliveries hereunder of any Material if, in the opinion of SELLER, its manufacture, sale and/or use would infringe any patent now or hereafter issued and under which SELLER is not licensed.
8. SAFETY; HEALTH. SELLER will provide BUYER with and/or access to Safety Data Sheets ("SDS") for the Materials sold hereunder which will provide warnings and safety and health information about such Materials. BUYER agrees to provide such warnings and information to all persons whom BUYER can reasonably foresee may be exposed to hazards of such Materials. BUYER will familiarize itself with all information and precautions, including but not limited to such related to safety and health, contained in the SDSs or otherwise transmitted to BUYER by SELLER at any time. BUYER will instruct its employees, agents, contractors, customers or any third party which may be exposed to the Materials about such information and precautions and make copies thereof available to such parties. BUYER assumes full liability and responsibility for compliance with the above-referenced information and precautions, and with all laws, statutes, ordinances and regulations of any governmental authority applicable to the processing, transportation, delivery unloading, discharge, storage, handling, sale and use of the Materials. BUYER further agrees to protect, defend and hold harmless SELLER from and against all claims, demands, causes of actions, damages, losses, liabilities, costs, expenses (including reasonable attorneys' fees), penalties, and judgments ("Claims") associated with the processing, transportation, delivery, unloading, discharge, storage, handling, sale or use of any Materials after delivery, which is (i) inconsistent with any information provided to BUYER by SELLER; (ii) due in whole or in part to BUYER's negligence; or (ii) in violation of any applicable statute, ordinance or regulation of any governmental authority.
9. WARRANTY LIABILITY. ANY TECHNICAL ADVICE FURNISHED OR RECOMMENDATION MADE BY SELLER OR ANY REPRESENTATIVE OF SELLER CONCERNING ANY USE OR APPLICATION OF ANY MATERIALS IS BELIEVED TO BE RELIABLE, BUT SELLER MAKES NO WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO ITS ACCURACY OR COMPLETENESS OR THE RESULTS TO BE OBTAINED. WITH REGARD TO PROCESSING OF ANY MATERIALS, BUYER ASSUMES FULL RESPONSIBILITY FOR QUALITY CONTROL, TESTING AND DETERMINATION OF SUITABILITY OF MATERIAL FOR ITS INTENDED APPLICATION OR USE. SELLER warrants that the Material sold hereunder shall conform to the attached specifications, if any, and otherwise to SELLER's standard specifications for such Material and that upon payment of the purchase price, BUYER will receive good title to all such Material free from any lien or encumbrance. NO OTHER WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WHETHER OF MERCHANTABILITY, FITNESS FOR PURPOSE, OR AGAINST INFRINGEMENT OR OTHERWISE, IS MADE AS TO THE MATERIAL SOLD OR ANY INSTRUCTIONS OR TECHNICAL ADVICE PROVIDED. On passage of title to BUYER, BUYER assumes all responsibility and liability for, and agrees to defend and indemnify SELLER against, all claims, loss or damage resulting from BUYER's storage, handling or use of the Materials purchased, alone or in combination with other substances, or their containers.
10. LIMITATION OF CLAIMS. NO CLAIM BY BUYER OF ANY KIND SHALL BE GREATER IN AMOUNT THAN THE PURCHASE PRICE OF THE MATERIALS IN RESPECT OF WHICH DAMAGES ARE CLAIMED. IN ADDITION, SELLER SHALL HAVE NO LIABILITY WHATSOEVER FOR SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR INJURIES TO PERSONS OR TO PROPERTY, BUSINESS INTERRUPTION AND LOST PROFITS). Failure by BUYER to give SELLER written notice of claim within 30 days from date of delivery or, in the case of non-delivery, from the date fixed for delivery, shall constitute a waiver by BUYER of all claims in respect of such Materials. Any action for breach of this Contract (other than for nonpayment of the purchase price) must be commenced within one year after the cause of action has accrued.
11. EXCUSES FOR NONPERFORMANCE. If the manufacture, transportation, delivery or receipt by either party of any Material is prevented, restricted or interfered with by reason of any event or cause whatsoever beyond the reasonable control of the party so affected, such party shall be excused from making or taking deliveries hereunder to the extent of such prevention, restriction or interference. The following, while not an exclusive listing, will, unless demonstrated clearly to the contrary, be considered not to be within a party's control or avoidable by reasonable diligence:  labor controversies; court decrees; inability to use the full capacity of plants or facilities as a result of governmental action, Acts of God, machinery malfunctions or breakdown; and inability, without litigation or the payment of penalties or unreasonable prices or the acceptance of unreasonable terms and conditions, to obtain fuel, power, labor, containers, transportation facilities, or materials necessary to produce the Goods.
12. SHORTAGES. If by reason of any such event or cause, the quantities of the Materials, or of any raw materials or utilities used in the production thereof, reasonably available to SELLER shall be less than its total needs for its own use and for sale, SELLER may allocate its available supply of any such Materials or raw materials among its existing or prospective purchasers and/or its own departments and subsidiaries in such manner as SELLER deems proper, without thereby incurring liability for failure to perform this contract. SELLER shall have no obligation to purchase supplies of any Material sold hereunder to enable it to perform its obligations hereunder. The foregoing notwithstanding, if for any reason a shortage occurs in SELLER's supply of the materials necessary to produce the Materials, SELLER shall have the right to satisfy its own requirements, and the requirements of its or its parent's divisions, subsidiaries and affiliates for such materials, whether or not any of such materials are allocated to the production of Materials.
13. SET OFF. SELLER has the right, but not the obligation, to set off against any amount owed by SELLER or any of its affiliated companies to BUYER or any of its affiliated companies any amount due to SELLER in connection herewith.
14. LAW AND JURISDICTION. This Contract is to be construed, and the respective rights and duties of BUYER and SELLER are to be determined according to the law of the State of New York. The parties agree to exclude the application of the UN Convention on Contracts for the International Sale of Goods.
15. ASSIGNABILITY. This Contract is not assignable or transferable by either party, except to the party's successor or to the transferee of all or substantially all the party's assets to which this Contract relates. SELLER and BUYER may also assign any of their respective rights and obligations hereunder to any of their affiliated entities. No assignment hereunder shall relieve any party of its obligations under this Contract.
16. MATERIALS PRODUCED IN OR SHIPPED TO EUROPE. In the event that REACH Regulation No 1907/2006 of the European Parliament and the Council ("REACH") applies and if BUYER makes a new use known to SELLER according to Art. 37.2 of REACH in order to extend the scope of registration of the Material, its chemical elements and/or its compounds as well as each mixture or solution supplied as defined by Art. 3 paragraphs (1) and (2) of REACH, BUYER shall be responsible for providing all information and data which are necessary for the update of the registration and bear any related additional costs.
17. FAIR LABOR STANDARDS ACT. SELLER represents that the Materials have been produced in compliance with the requirements of Section 6, 7 and 12 of the Fair Labor Standards Act of 1938, as amended.
18. RESELLERS, DISTRIBUTORS OR EXPORTERS. The Supplemental Terms attached hereto shall apply where the BUYER exports, distributes or resells the Materials.

SUPPLEMENTAL TERMS APPLICABLE TO RESELLERS, DISTRIBUTORS AND EXPORTERS
The following Supplemental Terms shall apply where the BUYER exports, distributes or resells the Materials.
S.1. RELATIONSHIP.  BUYER is and shall act as an independent exporter, distributor or reseller and shall purchase Materials from SELLER for its own account. BUYER shall bear its own costs and expenses in performing under this Contract and shall not receive any commission or other remuneration from SELLER. BUYER shall be solely responsible for any losses arising from the inability or failure of its customers to accept or pay for Materials. BUYER shall not have the power to act, and shall not hold itself out, as an agent or representative of SELLER or as an affiliate of SELLER, and shall not conclude contracts, enter into obligations or make representations on behalf of or for the account of SELLER or any affiliate of SELLER, or bind or attempt to bind SELLER or any affiliate of SELLER in any way whatsoever without the prior written consent of SELLER signed by an authorized representative of SELLER. SELLER shall have no obligation to take back Materials not resold by BUYER.
S.2. PACKAGING AND LABELING. BUYER shall not repackage or remove any of SELLER'S labels from any Materials, but shall resell them only in the container in which they were originally packaged by the SELLER, unless repackaging has been authorized by prior written approval of SELLER. BUYER shall not, at any time, sell, promote or advertise any of the Materials for any use or purpose other than such uses or purposes as are disclosed on the Material labels or in specifications published by SELLER.
S.3. EXPORT CONTROL. Any and all obligations of SELLER to provide the Materials, as well as any technical data, shall be subject in all respects to such United States laws and regulations as will from time to time govern the license and delivery of technology and products abroad by persons subject to the jurisdiction of the United States, including the Export Administration Act of 1979, as amended, any successor legislation, and the Export Administration Regulations issued by the U.S. Department of Commerce, Bureau of Export Administration. BUYER represents and warrants that it will not export or re-export the Materials or technical data related thereto except in conformity with such laws and regulations. BUYER agrees that, unless prior written authorization is obtained from the Bureau of Export Administration, or the Export Administration Regulations explicitly permit the export, re-export, and/or transshipment of the Materials or technical data disclosed or provided to BUYER, as applicable, BUYER shall not directly or indirectly export, re-export, or transship, directly or indirectly, the Materials or technical data, to any country, organization or individual as to which the U.S. Government has placed an embargo against the shipment of products, which embargo is in effect during the relevant time period.
S.4. PROHIBITED CUSTOMERS. BUYER further agrees not to resell Materials to any organization, public or private, which engages in the research or production of military devices, armaments, or any instruments of warfare, including biological, chemical and nuclear warfare without first obtaining permission in writing signed by an authorized representative of SELLER.
S.5. LICENSES AND APPROVALS. BUYER represents and warrants that it shall, at its expense, obtain any and all import licenses and governmental approvals that may be necessary to permit the sale by SELLER and the purchase by BUYER of the Materials, comply with all registration requirements in the applicable jurisdiction, obtain such approvals from the banking and other governmental authorities as may be necessary to guarantee payment of all amounts due hereunder to SELLER in U.S. dollars, and comply with any and all governmental laws, regulations, and orders that may be applicable to BUYER, including but not limited to any requirement to be registered as SELLER's independent distributor or reseller with any governmental authority, and including but not limited to any and all laws, regulations, or orders that govern or affect the ordering, export, shipment, import, sale (including government procurement), delivery, or redelivery of the Materials. BUYER shall furnish SELLER with such documentation as SELLER may request to confirm BUYER's compliance with this subsection and agrees that it shall not engage in any course of conduct that, in SELLER's reasonable belief, would cause SELLER to be in violation of the laws of any jurisdiction.
S.6. GOVERNMENT OFFICIALS. BUYER certifies that neither it, nor any of its directors, officers, employees, or agents is an official, agent, or employee of any government or governmental agency or political party or a candidate for any political office on the date of this Contract. BUYER shall promptly notify SELLER of any event that would or may result in an exception to the foregoing representation. BUYER shall not, directly or indirectly, in the name of, on behalf of, or for the benefit of SELLER offer, promise to pay, or pay any compensation, or give anything of value to, any official, agent, or employee of any government or governmental agency, or to any political party or officer, employee, or agent thereof. BUYER shall require each of its directors, officers, employees, and agents to comply with the provisions of this subsection. Any breach of the provisions of this subsection shall entitle SELLER to terminate the Contract immediately upon written notice to BUYER.
S.7. INSURANCE. During the time period in which BUYER is distributing or reselling any Materials, BUYER agrees to obtain and maintain, at a minimum, the following insurance coverage: Comprehensive General Liability affording coverage for bodily injury and broad form property damage including Independent Contractor, Completed Operations/Products and Blanket Contractual Liability of $2,000,000 per occurrence/ $5,000,000 in the aggregate. At SELLER's request, BUYER shall furnish evidence of such coverage.