# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| IN RE: | ) | BK. NO: 16-10154 |
| | ) | |
| **MICROFIBRES, INC.**, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

## OBJECTION OF UNITED STATES TRUSTEE TO
## AMENDED APPLICATION OF VERDOLINO & LOWEY FOR INTERIM
## FEES AND EXPENSES AS ACCOUNTANT TO THE CHAPTER 7 TRUSTEE

The United States Trustee (the "UST"), by and through counsel, hereby objects to the Amended Application of Craig Jalbert and Verdolino & Lowey (the "Applicant" or "V&L") for Interim Compensation and Reimbursement of Expenses (the "Application") (Dkt. #434), stating:

### INTRODUCTION

V&L seeks fees totaling $409,016.50 and reimbursement of out-of-pocket expenses of $14,990.02 incurred during the period January 29, 2016 to April 30, 2016 (the "Fee Period"). The Amended Application is objectionable because (i) it includes time entries for services that the UST asserts are outside the scope of the Applicant's employment; (ii) it includes lumped or block billed entries that are not appropriate and prevent a determination regarding the reasonableness of the fees charged; and (iii) it includes time entries for services that are trustee duties or are more properly described as overhead or administrative tasks.

### JURISDICTION, VENUE AND STATUTORY PREDICATES

1. The Court has jurisdiction over this matter pursuant to Sections 157 and 1334 of Title 28. This is a core proceeding pursuant to Section 157(b) of Title 28. Venue is proper pursuant to Section 1408 of Title 28.

2. The statutory predicates for the relief sought are Sections 327, 328, 330 and 331 of title 11, United States Code (the "Bankruptcy Code"). This matter was initiated pursuant and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330.

## FACTUAL BACKGROUND

3. On January 29, 2016 (the "Petition Date"), Microfibres, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. Joseph M. DiOrio (the "Trustee") was appointed as the Chapter 7 trustee on that same date.

5. On February 3, 2016, the Trustee filed an Application to Employ Verdolino & Lowey, P.C. as Accountants to the Chapter 7 Trustee (the "Employment Application").

6. By Order dated February 23, 2016 (the "Employment Order"), the Court authorized the Trustee's retention of V&L.

7. On August 18, 2016, V&L's first interim fee application (the "Initial Application") was filed, seeking an allowance of fees in the amount of $409,016.50 and reimbursement of out-of-pocket expenses in the amount of $14,990.02 (the same amount sought in the Amended Application).

8. At a hearing to consider the first interim fee application of the Trustee's attorneys, the Court went through a number of concerns with that application. A representative of V&L was at the hearing. At the Court's suggestion, the representative

agreed that an amended application would be filed for V&L, ostensibly to comply with issues raised by the Court at the hearing.

9. On September 30, 2016, the current Amended Application was filed.

10. The Amended Application seeks the same amount sought in the Initial Application, $409,016.50 in fees, and $14,992.02 in expenses for the 3-month period commencing on the Petition Date to April 30, 2016.

## **LEGAL STANDARDS AND APPLICATION**

### **Reasonableness**

11. Bankruptcy Code Section 330(a)(1) provides that:

12. To determine reasonableness, Section 330(a)(3) of the Bankruptcy Code instructs that:

> . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> a. the time spent on such services;
>
> b. the rates charged for such services;
>
> c. whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> d. whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> e. with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> f. whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

3

11 U.S.C. § 330(a)(3).

22. The First Circuit utilizes the "lodestar" method, which it adopted from non-bankruptcy, fee-shifting cases, to determine the reasonableness of requested bankruptcy professional fees under section 330. *See, In re Boston & Maine Corp. v. Moore*, 776 F.2d 2, 6 - 7 (1st Cir. 1985), *citing Furtado v. Bishop*, 635 F.2d 915, 920 (1st Cir. 1980) (analyzing the Civil Rights Attorneys Fees Award Act, 42 U.S.C. § 1988 *et seq*.); *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 754 - 757 (1st Cir. BAP 1982). Under this method,

> [T]he fee-setting court establishes a 'threshold point of reference' or the 'lodestar,' which is the number of hours reasonably spent by each [professional] multiplied by his reasonable hourly rate ... This lodestar can then be adjusted up or down to reflect a variety factors, such as delay in payment, quality of representation, and the results obtained, if they have not already been taken into account in computing the lodestar.

*In re Bank of New England Corp.*, 142 B.R. 584, 586 (D. Mass. 1992) *quoting, Boston & Maine Corp. v. Moore*, 776 F.2d at 7; *accord, In re The Vines, Inc.*, 159 B.R. 381, 381 - 382 (Bankr. D. Mass. 1993) (Kenner, J.)

23. It is, of course, the fee applicant's burden to demonstrate that the services for which remuneration is sought involve compensable service. *See In re Shades of Beauty, Inc.*, 56 B.R. 946, 949-50 (Bankr.E.D.N.Y.1986); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 429 (Bankr. D. Alaska 1984); *see also In re Smuggler's Beach Properties, Inc.*, 149 B.R. 740, 743 (Bankr. D. Mass. 1993). In order to apply the lodestar analysis, the Court must have a description of services sufficient to allow it to determine the reasonableness of the fees being sought. The services must be "sufficiently identified and explained." *In re First Software Corp.,* 79 B.R. 108, 111 (Bankr. D. Mass. 1987).

24. Each applicant bears the burden of proof for its claim for compensation.

4

25. The Court has an independent responsibility to review fee applications even in the absence of objections by other parties in." *In re Bank of New England Corp.*, 134 B.R. 450, 453 (Bankr.E.D.Mass.1991), *aff'd,* 142 B.R. 584 (D.Mass.1992) (citing *In re First Software Corp.,* 79 B.R. 108 (Bankr.D.Mass.1987)). The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the request for compensation. In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988); In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); see also, Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower courts' denial of improperly documented and inadequately detailed expenses).

**Outside the Scope of Employment**

26. The Employment Application stated the Trustee sought to employ V&L "as accountants to the Trustee, effective as of the Petition Date." In further description of the services sought, the Trustee stated the following:

> 7. The Trustee requires the services of accountants in this case to assist with the Debtor's financial and other records, to counsel the Trustee with regard to financial, tax, and other similar matters, preparation and filing of tax returns, and to provide general accounting, financial, and insolvency consultation. The Accountants have extensive experience and skills in bankruptcy, insolvency, and all facets of issues faced in Chapter 7 proceedings.
>
> 8. The Trustee contemplates that the Accountants will provide accounting and general bankruptcy advice as needed throughout the course of this case in connection with the fulfillment of the Trustee's duties as prescribed by Section 704 of the Bankruptcy Code.

*See* Employment Application, Dkt. #24, p. 2.

27. V&L was retained to counsel the Trustee with respect to financial, tax and similar matters, prepare and file tax returns, and provide general accounting, financial and insolvency consultation.

28. The Employment Application is directed to these financial and consulting goals.

29. The Amended Application reveals that V&L acted as the Trustee's general business advisors, clerks, records keeper, computer consultants and general assistants.

30. Many of the services performed by V&L go well beyond the scope of their employment.

31. As highlighted in the attached bills, V&L provided services including but not limited to: selling finished goods and inventory, supervising the Debtor's warehouse operation and maintenance, locating materials in the warehouse, overseeing and supervising employees, personnel matters, maritime matters, collection of accounts receivable, environmental and hazardous waste issues, interfacing with customers regarding sales and orders, and maintaining the Debtor's computer systems.

32. There are also many time entries where V&L was providing manual labor, such as segregating records for boxing, boxing up records, and delivering packages to FedEx.

33. Some examples of objectionable time entries are set forth below:

| Date | Staff | Hours | Rate | Fees |
|------|-------|-------|------|------|
| 2/12/16 | Bailey, T. | 2.8 | $335.00 | $938.00 |

Meet with environmental team from Triumvirate in Pawtucket for final review on clean out and initial review with engineer regarding state of building and expected report to Trustee.
(p. 11)

| 02/04/16 | Flynn, M | 5.2 | $325.00 | $1,690.00 |

Work with new RI property manager to secure property and follow-up with various parties re: property access; provide tour of facility; discussions with former employees re: keys to interior offices.
(p. 29)

6

| | | | | |
|---|---|---|---|---|
| 3/18/16 | Bley, P | 2.4 | $320.00 | $768.00 |

Oversight of Warehouse Staff, assign priorities for orders, discussions re: same, assign various tasks to staff; coordinate issues related to warehouse and shipping equipment.
(P. 30)

| | | | | |
|---|---|---|---|---|
| 4/18/16 | McDonald | 1.1 | $295.00 | $324.50 |

Traveled to Pawtucket office to resolve Exchange (email) Server problems and to setup & launch a local backup of this 04/18/16 server - travel time excluded.
(p. 89)

| | | | | |
|---|---|---|---|---|
| 04/21/16 | Bley, P. | 7.2 | $320.00 | $2,304.00 |

Oversight at Winston Salem - records retention efforts including working with part-time help to box records in anticipation of moving records to a central location.
(P. 93)

34. The UST does not have sufficient information to assert and therefore is not asserting that these services are unnecessary or unreasonable. Rather, the issue of the scope of employment goes to notice, rates charges and reasonableness.

35. The rate charged for these services that were outside the scope of V&L's employment ranges from a low of $225 an hour and a high of $445 an hour, with the majority of the services provided at the rate of $320 an hour.

36. The case of *In re Wang Laboratories*, 154 B.R. 392, 396 (B. Mass. 1993) is instructive. In that case, Judge Hillman denied compensation to Price Waterhouse (PW) for services that exceeded the scope of its employment by a chapter 11 committee, noting:

> This is not judicial nit-picking or an application of *strictissimi juris*. If the Court had been informed that it was the intention of the Committee to use PW to perform the marketing research function of customer visits (and others noted below) with PW personnel charging at a blended rate of $206, the Application would have been summarily denied. There has been no demonstration either that the function was required to be performed or that PW was the appropriate organization to accomplish that end.
>
> Compensation for "Customer visits" is denied.

7

*Id.*, at 396.

38. As in that case, the Employment Application provided no notice to the Court, parties in interest, or the United States Trustee that the Applicant would be providing services like boxing records, managing a warehouse and selling inventory at the rates set for high-end accounting and financial consulting services.

38. Had those services and accompanying rates been described in the Employment Application, the UST would surely have objected to those services being provided at those rates, as well as at least have raised the question of whether this Applicant is the best party to provide these services.

39. As noted in the case of *In re Computer Learning Centers, Inc.*, 285 B.R. 191 (Bankr. E.D. Va. 2002),

> A professional's employment in a bankruptcy case is limited to the employment approved in the order authorizing the employment. *In re New England Fish Co*., 33 B.R. 413, 420 at n. 1 (Bankr.W.D.Wash.1983). This assures proper management of the case and the professionals. *Id.* at 418. The scope of employment may not be expanded by simple agreement between the professional and the trustee. It must be approved by the court. Both parties are responsible for assuring that the scope is not exceeded. The fact that a professional is retained for one purpose does not permit him to pursue another without an amended order of appointment. *In re Greenwald*, 145 B.R. 794, 796 (Bankr.S.D.N.Y.1992); In re Bicoastal Corp., 122 B.R. 140, 148 (Bankr.M.D.Fla.1990) (accountant performed legal work). Employment in one professional discipline does not per se prohibit the same individual from being employed in a second professional discipline. *In re Harold Williams Development Co*. However, to be compensated as a professional in each discipline, the individual must be employed as a professional in each discipline. In this case the trustee requested approval for hiring an accountant to perform traditional accounting services. The list of services anticipated to be rendered suggests traditional accounting services. The services involved preparation of financial reports, financial analysis and tax assistance.No mention was made of hiring a business consultant or manager. The business consultation services exceeded the scope of the accountant's employment

*Computer Learning Centers,* at 205-206.

40. The court in *Computer Learning Centers, Inc.* faced a situation similar to the one at hand – an accounting firm that provided significant management services that were beyond the scope of their employment. The court there allowed a retroactive amendment to the scope of the employment application to allow the professionals to be paid for services that, like here, were beyond the scope of the employment. In so allowing, however, the court noted that the trustee must show that "the employment would have been approved originally, that there is no prejudice to the estate or the creditors and that there is good cause for the delayed request." *Id.,* at 206.

41. Attached hereto as Exhibit A are the time records of V&L, with the outside the scope of employment time entries highlighted in green.

### **"Lumping" or Block Billing**

42. Pursuant to the Local Rule of this Court, Local Rule 2016-1(a)(3), each application must "describe the specific services performed each day by each person with the time broken into units of tenths of one hour devoted to such services."

43. This requirement is the common practice in bankruptcy courts, and is described as well in the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "UST Guidelines").

44. Generally, fee applications, standing alone, must contain sufficient detail to demonstrate compliance with Section 330 of the Bankruptcy Code. *In re CCT Commcations, Inc.*, No. 07-10210, 2010 WL 3386947, at *4 (Bankr. S.D.N.Y. Aug. 24,

9

2010) (citing UST Guidelines, (b)). Any uncertainties due to poor record keeping are resolved against the applicant. *Id.* (citing *In re Poseidon Pools of America*, 216 B.R. 98, 100-101 (E.D.N.Y. 1997)).

45. To that end, the UST Guidelines provide that:

> Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; . . . . Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference.

*See* UST Guidelines, (b)(4)(v).

46. Billing records must clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in increments greater than one-tenth of an hour, who performed the task, the level of experience and that person's hourly rate). *In re Baker*, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007) (citing *In re Fibermark, Inc.*, 349 B.R. 385, 395 (Bankr. D. Vt. 2006)).

47. Some examples of objectionable time entries are set forth below:

| Date | Staff | Hours | Rate | Fees |
|---|---|---|---|---|
| 4/12/16 | Leonard | 6.0 | $225.00 | $1,350.00 |

Inventory reporting, TCW with P. Bley re: Fabricut; preparation of proformas; update proforma spreadsheet with information from Thomas Industries.
(p. 17)

| 03/10/16 | Flynn, M | 2.1 | $325.00 | $682.00 |
|---|---|---|---|---|

Review of documents received re: requests for former employee information and for DOL; discuss with S. Young; complete and email to Trustee; attention to and review documents in response.
(P. 34)

| 02/05/6 | Anzuoni, S. | 3.0 | $195.00 | $585.00 |
|---|---|---|---|---|

> Phone calls and emails to customers w/ outstanding balances to attempt collections of AR; search for copies of invoices, BOL's, packing lists, and/ or shipment tracking numbers to scan and email to customer as requested; discussions with S. Young and M. Bierne re: specific customer issues, location of information, or further background detail ie: payment history; discussions w/ D. Morrison and M. Czarnecki re: customer problems, validity of customer claims and continuity, and RMA transaction history.
> (P. 59)

> 04/29/16  Flynn, M  2.9  $$325.00  $942.50
> Continued work on gathering financial information for potential buyers; multiple TCWs, emails, and discussions w/ K. Lowey, S. Anzuoni, and Riparian re: same.
> (P. 82)

48. Aggregating of multiple tasks into one billing entry, typically referred to as block billing or lumping, is routinely disallowed as it makes it exceedingly difficult to determine the reasonableness of the time spent on each of the individual tasks performed. *See Baker*, 374 B.R. at 494 (citing *Dimas*, 357 B.R. at 576; *Fibermark*, 349 B.R. at 395; *Poseidon Pools*, 180 B.R. at 729) (additional citations omitted)). As a result of lumping, the timekeeper fails to sustain [his] burden of providing that [his] fees are reasonable. *Brous*, 370 B.R. at 576. Consequently, courts summarily will disallow time for discrete legal services merged together in a fee application. *Baker*, 374 B.R. at 494, 496 (bankruptcy court deducted 20 percent from the requested fees for improper block billing); *see also, In re M. Fabrikant & Sons, Inc.*, Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. Jan. 13, 2009) (Memorandum Decision Regarding Applications for Professional Fees and Reimbursement of Expenses) (ECF Dkt. No. 976) (bankruptcy court allowed only 30 minutes for each lumped entry, irrespective of the aggregate time billed for that entry).

49. Attached hereto as Exhibit A are the time records of V&L, with the lumped or blocked time entries highlighted in yellow.

11

### **Trustee Duties**

50. The duties of a chapter 7 trustee are set forth in 11 U.S.C. § 704(a), which specifically provides:

(a) The trustee shall –

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(a)(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires;

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee;

(10) if with respect to the debtor there is a claim for a domestic support obligation, provide the applicable notice specified in subsection (c);

(11) if, at the time of the commencement of the case, the debtor (or any entity designated by the debtor) served as the administrator (as defined in section 3 of the Employee Retirement Income Security Act of 1974) of an employee benefit plan, continue to perform the obligations required of the administrator; and

   (12) use all reasonable and best efforts to transfer patients from a health care business that is in the process of being closed to an appropriate health care business that - (A) is in the vicinity of the health care business that is closing; (B) provides the patient with services that are substantially similar to those provided by the health care business that is in the process of being closed; and (C) maintains a reasonable quality of care.

11 U.S.C. § 704(a).

  51. Pursuant to section 327(a) of the bankruptcy code, the Trustee is allowed to "employ one or more attorneys, accountants, appraisers, auctioneers, or other professionals … to represent or assist the trustee in carrying out the trustee's duties under this title."

11 U.S.C. § 327(a).

  52. The bankruptcy code further clarifies, at section 328(b), the right to compensation for someone other the trustee performing trustee duties.

> (b) If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

11 U.S.C. § 328(b).

  53. The long-standing rule is that professionals may not be compensated for performing the trustee's duties. *Computer Learning Centers,* 285 B.R. at .231. "To allow such employment raises questions of the extent to which a trustee may properly delegate core responsibilities and whether such delegation effects a circumvention of the maximum compensation that may be paid to a trustee." *Id.* at 206.

  54. The United States Trustee's Handbook for Chapter 7 Trustees provides:

13

>Attorneys and accountants shall not be compensated for performing the statutory duties of the trustee. 11 U.S.C. § 704, Fed. R. Bankr. P. 2015(a). The following list includes examples of services considered to fall within the duties of a trustee:
>
>1) preparing for and examining the debtor at the meeting of creditors in order to verify factual matters;
>
>2) Examining proofs of claim and filing routine objections to the allowance of any claim that is improper;
>
>3) Investigating the financial affairs of the debtor;
>
>4) Furnishing information to parties in interest on factual matters;
>
>5) Collecting and liquidating assets of the estate by employing auctioneers or other agents and soliciting offers;
>
>6) Preparing required reports;
>
>7) Performing banking functions; and
>
>8) In appropriate cases, filing applications for employment of professionals and supervising those professionals.
>
>The aforementioned trustee duties are not compensable as legal or accounting services unless sufficiently documented to show that special circumstances exist.

Chapter 7 Trustee Handbook, at p. 50-51.

55. In this case, V&L provided significant services that would be considered trustee duties. They furnished information to parties in interest on factual matters by responding to phone calls and inquiries regarding assets and claims. They collected and liquidated assets of the estate and solicited offers. They ran the operation of the North Carolina warehouse. They assisted potential buyers in touring facilities. They attended the section 341 meeting of creditors and engaged in preparations for the meeting. They opened mail and distributed the contents.

56. Some of these items may also be considered overhead and administrative rather than trustee duties.

14

57. In advance of filing its Initial Application, V&L provided a draft application to the UST. The UST noted several issues to V&L regarding the application, including certain services related to opening mail, which were billed at the rate of $215 an hour. In the Initial Application and the Amended Application, the description of those services has been improved and the hourly rate reduced to $100 an hour.

58. Some examples of objectionable time entries are set forth below:

| Date | Staff | Hours | Rate | Fees |
|---|---|---|---|---|
| 02/04/16 | Bailey, T | 4.2 | $335.00 | $1,407.00 |

Meet Triumvirate (a potential hazardous waste vendor) in Pawtucket to tour site and work on cleanup site and alternate methods of removal vs. remediation; cnf call K Lowey re same; memo re tour; setting up meeting in Winston Salem. (P. 29)

| Date | Staff | Hours | Rate | Fees |
|---|---|---|---|---|
| 02/04/16 | Anzuoni, S | 3.7 | $195.00 | $643.50 |

Review outstanding AR listing and locate customer invoices.

| Date | Staff | Hours | Rate | Fees |
|---|---|---|---|---|
| 03/04/16 | Grossmith | 1.0 | $100.00 | $100.00 |

Opening Debtor mail; including scanning and sending info to S. Anzuoni and M. Flynn.

59. Attached hereto as Exhibit A are the time records of V&L, with the trustee duties and/or overhead entries highlighted in pink.

60. The UST notes that many of the time entries identified in this Objection for the may fall into more than one category, *i.e.,* an entry may be objectionable because it is outside the scope and is lumped or blocked billed. Where the UST has identified non-compliant or otherwise objectionable time entries that fall under more than one category, the UST is of course only asking the fees be reduced or denied once so there will be no overlap in the amounts of the offending time entries or the proposed reductions.

## VI. CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court enter an Order (i) reducing the fees that V&L has requested, and (ii) granting such other relief as is just and equitable.

        Respectfully submitted,

        WILLIAM K. HARRINGTON
        United States Trustee for Region One

By: /s/ *Sandra Nicholls*
        Sandra Nicholls, Trial Attorney
        U.S. Department of Justice
        Office of the U.S. Trustee
        U.S. Courthouse
        One Exchange Terrace, Suite 431
        Providence, RI 02903
        401-528-5553
        Sandra.Nicholls@usdoj.gov

Dated: November 4, 2016

WITHIN FOURTEEN (14) DAYS AFTER SERVICE AS EVIDENCED BY THE CERTIFICATION, AND AN ADDITIONAL THREE (3) DAYS PURSUANT TO FED. R. BANK. P. 9006(F) IF SERVED BY MAIL, ANY PARTY AGAINST WHOM SUCH PAPER HAS BEEN SERVED, OR ANY OTHER PARTY WHO OBJECTS TO THE RELIEF SOUGHT, SHALL SERVE AND FILE AN OBJECTION OR OTHER APPROPRIATE RESPONSE TO SAID PAPER WITH THE BANKRUPTCY COURT CLERK'S OFFICE, 380 WESTMINSTER STREET, 6TH FLOOR, PROVIDENCE, RI 02903, (401) 626-3100. IF NO OBJECTION OR OTHER RESPONSE IS TIMELY FILED, THE PAPER WILL BE DEEMED UNOPPOSED AND WILL BE GRANTED UNLESS: (1) THE REQUESTED RELIEF IS FORBIDDEN BY LAW; (2) THE REQUESTED RELIEF IS AGAINST PUBLIC POLICY; OR (3) IN THE OPINION OF THE COURT, THE INTEREST OF JUSTICE REQUIRES OTHERWISE.

**Certification of Service**

I hereby certify that on November 4, 2016, I electronically filed the Objection to Amended Application in the above captioned matter with the Clerk of the Bankruptcy Court for the District of Rhode Island using the CM/ECF System. The following participants are scheduled to receive notice electronically:

- Kristen Forbes Cuddy    klforbes@dioriolaw.com, cahoefsmit@dioriolaw.com

- Joseph M. DiOrio    jmdiorio@dioriolaw.com, RI02@ecfcbis.com,klforbes@dioriolaw.com,ghpalmer@dioriolaw.com,rabrigham@dioriolaw.com,amcray@dioriolaw.com
- Jennifer V. Doran    jdoran@haslaw.com, calirm@haslaw.com;kabarrett@hinckleyallen.com
- Donald G Frankel    DONALD.FRANKEL@USDOJ.GOV
- Peter J. Furness    peter@rhf-lawri.com, kristin@rhf-lawri.com;kristen@rhf-lawri.com
- Richard L. Gemma    rgemma@wdglaw.com, mgomes@wdglaw.com
- Bruce W. Gladstone    bgladstone@cm-law.com, cblessing@cm-law.com
- Lawrence L. Goldberg    mary@lg.necoxmail.com
- Marc B Gursky    mgursky@rilaborlaw.com
- Thomas S. Hemmendinger    themmendinger@brcsm.com, dantonetti@brcsm.com;lkresge@brcsm.com
- Lauren E. Jones    ljones@appeallaw.com
- Lisa M. Kresge    lkresge@brcsm.com, dantonetti@brcsm.com
- Christopher Lefebvre    court@lefebvrelaw.com, maria@lefebvrelaw.com
- Elizabeth A. Lonardo    elonardo@smsllaw.com, jpado@smsllaw.com
- M. Vance McCrary    vmccrary@thegardnerfirm.com
- Paul F. O'Donnell    podonnell@hinckleyallen.com, kabarrett@hinckleyallen.com
- Mary E. Olsen    molsen@thegardnerfirm.com, apage@thegardnerfirm.com
- Gardner H. Palmer    ghpalmer@dioriolaw.com, cpalmer76@verizon.net
- William Walt Pettit    walt.pettit@hutchenslawfirm.com, tracy.vines@hutchenslawfirm.com
- Jeffrey K. Techentin    jtechentin@apslaw.com, lneville@apslaw.com
- Kyle Zambarano    kzambarano@apslaw.com

    /s/ *Sandra Nicholls*
    Sandra Nicholls